UNITED STATES of America

v.

**Marva HEADLEY, a/k/a "Brenda" Appellant.**

No. 90–1025.

United States Court of Appeals, Third Circuit.

Argued Dec. 13, 1990.

Decided Jan. 24, 1991.

Rehearing Denied Feb. 28, 1991.

Michael M. Baylson, U.S. Atty., Walter S. Batty, Jr., Thomas J. Eicher (argued), Odell Guyton, Asst. U.S. Attys., Philadelphia, Pa., for appellee.

Marilyn J. Gelb (argued), Philadelphia, Pa., for appellant.

Before SLOVITER and MANSMANN, Circuit Judges, and SAROKIN, District Judge.*

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

### I.

Following a jury trial, Marva Headley was convicted on one count of conspiring to manufacture and distribute cocaine base

and marijuana, in violation of 21 U.S.C. § 846 (1982), and another count of possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1). The two counts charged against Headley were part of a 72 count indictment arising out of a large criminal drug manufacturing and distributing enterprise in Philadelphia run by Robert Smith, his two brothers, and Smith's girlfriend Robin Byrd from 1985 to 1988. The Smith Narcotics Organization (SNO) was a well-organized operation. Cocaine was delivered from Brooklyn, New York, and Miami, Florida, and manufactured in Philadelphia, Pennsylvania, into cocaine base, or crack, which was packaged and sold at approximately 20 different locations in Philadelphia. Many of these "retail" outlets were fortified to make detection and arrest by the police more difficult. SNO employed many individuals to sell drugs and to act as lookouts.

Twenty-three individuals were indicted. Many pled guilty. Headley was tried along with eight other alleged co-conspirators. Robin Byrd, one of the leaders of SNO who pled guilty, testified that Smith told her that on several occasions Headley brought cocaine from Brooklyn to Philadelphia for the Smith organization. Harold Lewis testified that he saw Headley twice at the location where drugs were packaged and distributed. Although he never saw Headley with drugs, Lewis said that drugs would appear after her visits.

The district court fixed Headley's offense level at 36 based on the quantity of drugs involved. Although the presentence report indicated that the extent of Headley's involvement in SNO "may have been limited to that of being a courier on several occasions," Headley's counsel did not argue that adjustment in the offense level was appropriate for Headley's minor or minimal role in the offense as allowed by section 3B1.2 of the United States Sentencing Guidelines (U.S.S.G.). Without referring to the issue of adjustment, the district court did invite Headley's counsel to "talk [it]

into the lower part of the range" or "into departing below." App. at 30. There was evidence that Headley lived in Brooklyn with her five children fathered by Robert Smith, the leader of SNO, who ranged in age from 11 months to 11 years. In the course of the sentencing hearing, the court considered departure based on family ties and responsibilities, U.S.S.G. § 5H1.6, but concluded that it had no authority to depart downward on that basis. Headley was sentenced on October 5, 1989 to 17½ years, the minimum in her guideline range.

On appeal, Headley argues that her counsel's failure to argue the appropriateness of adjustment for her role in the offense constituted ineffective assistance of counsel, that the court erred in not considering adjustment for her role in the offense *sua sponte*, and that the district court's refusal to depart downward was based on its mistaken belief that it lacked the legal authority to do so on the basis of family ties and responsibilities.[1]

## II.

 Headley, a single mother, argues that the district court erred as a matter of law in concluding that it lacked authority to depart downward from the guideline range based on the psychological impact that a lengthy sentence would have on her five young children. Before addressing her argument, we must consider the basis of the court's non-departure, for this court has no jurisdiction to review a district court's discretionary refusal to depart below the guidelines. *See United States v. Denardi*, 892 F.2d 269, 271–272 (3d Cir.1989). It appears from the record that the district court believed that it lacked legal authority to depart and therefore we have jurisdiction to consider whether that belief was erroneous as a matter of law.

The sentencing statute permits departure from the guideline range only when a court finds "an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines and that should result in a sentence different from that described." 18 U.S.C. § 3553(b) (1982). The government argues that the Sentencing Commission considered and rejected Headley's basis for departure in section 5H1.6. That section provides,

> Family ties and responsibilities and community ties are not ordinarily relevant in determining whether a sentence should be outside the guidelines. Family responsibilities that are complied with are relevant in determining whether to impose restitution and fines. Where the guidelines provide probation as an option, these factors may be relevant in this determination.

U.S.S.G. § 5H1.6. The "not ordinarily relevant" language of section 5H1.6 suggests that in extreme circumstances departure based on family ties and responsibilities is permissible. *See United States v. Sharpsteen*, 913 F.2d 59, 63 (2d Cir.1990) ("The clear implication of section 5H1.6 is that if the court finds that the circumstances related to family ties and relationships are extraordinary, it is not precluded as a matter of law from taking them into account in making a downward departure."); *see also United States v. Deigert*, 916 F.2d 916, 919 (4th Cir.1990).

 While district courts have the authority to depart for extraordinary family circumstances, every court to consider the issue of departure based on the effect that sentencing a single parent to prison will have on minor children has found the circumstances not to be extraordinary. In *United States v. Brand*, 907 F.2d 31 (4th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 585, 112 L.Ed.2d 590 (1990), the court of appeals reversed the order of the district court departing downward because defendant was a single mother with two small children. The appellate court found departure to be clearly erroneous, stating that "[a]lthough there doubtless are circumstances in which unique family responsibili-

---

**1.** Headley also argues that the evidence adduced at trial is insufficient to support her convictions and that the district court's admission of dog sniffing evidence was an abuse of discretion. After consideration, we reject these arguments without discussion.

ties might justify a downward departure," the imprisonment of a single parent was not extraordinary. *Id.* at 33; *see also United States v. Goff,* 907 F.2d 1441, 1446 (4th Cir.1990) ("[Defendant] has shown nothing more than that which innumerable defendants could no doubt establish: namely, that the imposition of prison sentences normally disrupts ... parental relationships.").

Thus, although the district court had the authority to depart downward on the basis of extraordinary circumstances, Headley failed to show that the circumstances in this case were extraordinary. We conclude that the court's refusal to depart was not erroneous.

### III.

Headley next argues that the district court erred in fixing the base offense level without consideration of her role in the offense. Section 3B1.2 provides:

Based on the defendant's role in the offense, decrease the offense level as follows:

(a) If the defendant was a minimal participant in any criminal activity, decrease by 4 levels.

(b) If the defendant was a minor participant in any criminal activity, decrease by 2 levels.

In cases falling between (a) and (b), decrease by 3 levels.

U.S.S.G. § 3B1.2.

■ Headley concedes that trial counsel did not specifically call this guideline to the district court's attention, and did not request the court to make a finding that her role was minor or minimal. Under these circumstances, the court had no affirmative duty *sua sponte* to make a determination whether adjustment was appropriate. Although Headley argues that the district court's duty to consider role in offense is implicit in section 1B1.2(b) ("[a]fter determining the appropriate offense guideline section ... determine the applicable guideline range in accordance with § 1B1.3 (Relevant Conduct)"), this section contemplates that the court will evaluate a defendant's relevant conduct to exclude conduct

that was neither within the scope of the jointly-undertaken activity nor reasonably foreseeable by the defendant, and does not require the district court to consider whether a two or four point adjustment is warranted for defendant's role in offense.

■ While we cannot find that the district court erred in failing to consider the adjustment issue *sua sponte,* Headley's argument that her trial counsel was ineffective for failure to argue the appropriateness of adjustment is more persuasive. Ineffective assistance of counsel claims are not generally entertained on direct appeal. *See United States v. Theodoropoulos,* 866 F.2d 587 (3d Cir.1989). This court has held repeatedly, "the proper avenue for pursuing such claims is through a collateral proceeding in which the factual basis for the claim may be developed." *Id.* at 598. There is, however, a narrow exception to the rule that defendants cannot attack the efficacy of their counsel on direct appeal. Where the record is sufficient to allow determination of ineffective assistance of counsel, an evidentiary hearing to develop the facts is not needed. *Government of Virgin Islands v. Zepp,* 748 F.2d 125, 133 (3d Cir.1984) (defendant's counsel was ineffective because of a conflict of interest); *see also Theodoropoulos,* 866 F.2d at 598 (no direct review "[u]nless the record sufficiently establishes a basis for our review").

■ In this case, there is no need for further factual development. Under *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), to establish ineffective assistance of counsel a criminal defendant must show that counsel's conduct was deficient (*i.e.* "outside the wide range of professionally competent assistance"), *id.* at 690, 104 S.Ct. at 2066, and that the deficiency resulted in prejudice to the defense (*i.e.,* "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different"). *Id.* at 694, 104 S.Ct. at 2068.

The SNO criminal enterprise was extensive, and evidence at trial established that Headley's participation was limited to deliv-

ering drugs on a number of occasions. Furthermore, the presentence report stated that "[a]lthough Ms. Headley may have had full knowledge of the scope of this crime, it appears that her actual involvement may have been limited to that of being a courier on several occasions." This certainly put counsel on notice that it might have been fruitful to seek a downward adjustment ranging from two to four levels based on Headley's minimal or minor role in the offense.

The Commentary to Section 3B1.2 explains that the role in offense adjustment is designed "for a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant." U.S.S.G. § 3B1.2, comment. One of the examples contained in the Commentary to this section illustrating an appropriate downward adjustment for a minimal participant involves a defendant who was hired by a marijuana importation conspiracy to offload part of a single shipment of marijuana or a case where an individual was recruited as a courier for a single smuggling transaction involving a small amount of drugs. U.S.S.G. § 3B1.2 comment. (n. 2).[2]

There is no rational basis to believe that Headley's trial counsel's failure to argue adjustment was a strategic choice. Clearly it falls outside the prevailing professional norms. Given the scope of SNO and the district court's express willingness to consider departure, it is reasonable to believe that the outcome of the proceeding may have been different had counsel argued for adjustment.

We do not suggest that an adjustment for role in the offense was required. The fact that a defendant's participation in a drug operation was limited to that of courier is not alone indicative of a minor or minimal role. *See United States v. Buenrostro*, 868 F.2d 135, 138 (5th Cir. 1989) (determination of minor or minimal role status "turns upon culpability, not courier status"), *cert. denied*, — U.S. —, 110 S.Ct. 1957, 109 L.Ed.2d 319 (1990); *see also United States v. White*, 875 F.2d 427, 434 (4th Cir.1989). As the Second Circuit recently said, "the culpability of a defendant courier must depend necessarily on such factors as the nature of the defendant's relationship to other participants, the importance of the defendant's actions to the success of the venture, and the defendant's awareness of the nature and scope of the criminal enterprise." *United States v. Garcia*, 920 F.2d 153 (2d Cir.1990) (district court's refusal to depart downward under § 3B1.2 was not clearly erroneous); *see also* § 3B1.2, comment. (n. 1) (lack of knowledge or understanding of the scope and structure of the enterprise is evidence of minimal role in offense). On the other hand, the fact that Headley's actual criminal conduct was dwarfed by the conduct of other co-conspirators and that she lived in Brooklyn while the conspiracy was centered in Philadelphia are factors that suggest that her involvement, knowledge and culpability may have been significantly less than the other SNO members.

It follows that because counsel's ineffectiveness, which deprived Headley of the opportunity to have the district court consider whether she qualified for an adjustment under § 3B1.2, is plain from the record, we must remand to give Headley the opportunity to make this argument to the district court. There is no need for this court to vacate Headley's sentence at this time. The district court can do so should it determine that such an adjustment, based

---

**2.** We note that after Headley's sentencing there was a clarification by the Commission, effective November 1, 1990, of the conduct that is relevant to such an adjustment. The introductory Commentary to Chapter 3, Part B (Role in Offense) now provides that the determination of a defendant's role in the offense is to be made on the basis of all conduct within the scope of § 1B1.3 (Relevant Conduct). U.S.S.G. Ch. 3, Pt. B, intro. comment. The Commentary to section 1B1.3 provides that in a case of criminal activity undertaken in concert with others, the defendant is held accountable for the reasonably foreseeable conduct of other defendants. But "where it is established that the conduct was neither within the scope of the defendant's agreement, nor was reasonably foreseeable in connection with the criminal activity the defendant agreed to jointly undertake, such conduct is not included in establishing the defendant's offense level." U.S.S.G. § 1B1.3 comment. (n. 1).

on the relativity of Headley's conduct to the total offense behavior, is appropriate.

### IV.

For the reasons set forth above, we will remand this matter to the district court for consideration of Headley's role in the offense and for resentencing in the event the court deems such an adjustment is warranted.