UNITED STATES of America,
Appellee,

v.

Rafael RODRIGUEZ, Appellant.

No. 02–3679.

United States Court of Appeals,
Third Circuit.

Argued July 23, 2003.

Filed Sept. 4, 2003.

Christopher J. Christie, United States Attorney, George S. Leone, Chief, Appeals Division, Ricardo Solano, Jr. (Argued), Assistant U.S. Attorney, Newark, NJ, for Appellee.

John H. Yauch (Argued), Lisa M. Mack, Federal Public Defender, Newark, NJ, for Appellant.

Before ALITO, FUENTES, and BECKER, Circuit Judges.

## OPINION OF THE COURT

BECKER, Circuit Judge.

This is an appeal by Rafael Rodriguez ("Rodriguez"), a "mule," who was convicted of drug importation from Panama pursuant to a plea agreement in which the Government agreed not to oppose a two level downward Sentencing Guidelines adjustment for minor role. Although the Probation Office recommended that Rodriguez be afforded the adjustment, the District Court declined to grant it to him reasoning that, while there were plainly several people involved in the importation scheme (including at least the man who induced Rodriguez to carry the drugs and the man he was supposed to call when he got to Newark), in the absence of evidence as to the relative roles of the others, Rodriguez had failed to meet his burden of establishing entitlement to the adjustment.

We acknowledge the considerable discretion afforded the District Court in making the minor role determination, a decision to which we give deference. In this case, however, it appears that the Court was making not a discretionary evaluation of the situation based on credibility based fact findings but a legal ruling about the quantum of evidence necessary to justify the adjustment, a ruling with which we

disagree. Accordingly, we will vacate the judgment of sentence and remand for a new sentencing hearing.

## I.

On February 6, 2002, Rodriguez arrived at Newark's Liberty International Airport on a flight originating from Panama and was selected for a routine customs examination. The agents examined Rodriguez' luggage and discovered a brown, powdery substance at the bottom of his suitcase that later tested positive for heroin. Rodriguez was immediately placed under arrest and admitted to knowing that the bag contained an illegal drug though he was not sure whether it was heroin or cocaine. He explained that he worked as a taxi driver in Panama and that a passenger he had not previously encountered asked him if he knew anyone who would be interested in taking some drugs to America for a five thousand dollar fee. Rodriguez volunteered for the job. The passenger, a Columbian national by the name of "El Mono," purchased the plane ticket for Rodriguez in cash and gave him the drugs to transport. He also gave Rodriguez two cell phone numbers for a certain "Jose," whom Rodriguez was to contact one day after his arrival in the United States.

▆▆ Rodriguez was charged with importing more than 100 grams of heroin into the United States, in violation of 21 U.S.C. §§ 952(a) and 960(b)(2).[1] He pled guilty pursuant to a plea agreement. In the agreement, the government represented that it would not oppose Rodriguez' claim that he was a minor participant entitled to a two level decrease under U.S.S.G. § 3B1.2. At sentencing, the government once again expressed its willingness to see Rodriguez awarded the minor participant two level downward adjustment; it also agreed that Rodriguez had met the criteria for the "safety-valve" limitation on applicability of statutory minimum sentences pursuant to U.S.S.G. § 5C1.2.[2] At sentencing, the District Court gave effect to the safety-valve, but denied the downward adjustment for being a minor participant.

▆▆ The District Court had jurisdiction under 18 U.S.C. § 3231 and this court has jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742. As we view the District Court's determination about burden of proof as a question of law, our review is plenary. *See United States v. Isaza–Zapata,* 148 F.3d 236, 237 (3d Cir. 1998).

## II.

▆▆ In making its determination as to whether Rodriguez would receive the mi-

---

1. The laboratory test revealed that Rodriguez was carrying heroin with a 93% purity level, though there was initial disagreement among the parties as to the amount of heroin found in the suitcase. At the sentencing hearing the parties agreed that the amount of heroin found in Rodriguez' suitcase was more than seven hundred grams but less than one thousand grams, giving Rodriguez a base offense level of 30. *See* U.S.S.G. § 2D1.1.

2. The "safety-valve" may be granted when, among other things, the defendant has "truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of

the same course of conduct or of a common scheme or plan...." U.S.S.G. § 5C1.2. As the District Court correctly noted, it is not necessarily inconsistent to grant the safety-valve departure while denying the minor participant adjustment. We have held that eligibility for the benefits of one provision of the Sentencing Guidelines does not automatically entitle the defendant to the benefits of another provision. *See United States v. Sabir,* 117 F.3d 750, 754 (3d Cir.1997) (defendant entitled to the benefit of the safety-valve provisions not necessarily entitled to a reduction in his or her offense level for acceptance of responsibility.)

nor participant downward adjustment, the District Court used *United States v. Headley,* 923 F.2d 1079 (3d. Cir.1991), as its frame of reference. In *Headley,* we applied a series of factors to facilitate the minor participant analysis. Those factors are "the nature of the defendant's relationship to other participants, the importance of the defendant's actions to the success of the venture, and the defendant's awareness of the nature and scope of the criminal enterprise." *Headley* at 1084 (quoting *United States v. Garcia,* 920 F.2d 153, 155 (2d Cir.1990)).[3] Although these factors will be highly useful in assessing a defendant's relative culpability where a great deal is known about the drug ring, e.g., the Philadelphia based drug ring in *Headley* itself, these factors may be less useful when agents apprehend a mule-importer with little or no information about the other actors or the scope of the criminal enterprise. At all events, it is useful to discuss all three factors.

 In the case at bar, the District Court focused most of its analysis on the first *Headley* factor – the nature of the defendant's relationship to other participants. In assessing Rodriguez' relationship to the other participants, the District Court quoted a portion of the presentence report that stated: "neither the defendant, nor the government, has provided the probation office with any information to be considered in a factual analysis of the defendant's level of culpability for the instant offense, primarily because there is no credible information regarding other participants in the offense conduct." (PSI para. 13.) Relying on that determination, the District Court declared: "Based on that alone, the defendant has failed in its burden of production to verify his role as a minor role." The Court's reasoning

seemed to be that since there was no *independent* information that could corroborate Rodriguez' account, there was no way to determine his relationship to other participants, and hence no basis for the downward adjustment.

Rodriguez argues that it was improper for the District Court to conclude that he had failed to meet his burden of proof in relation to the minor role simply because he could not provide corroboration of his description of his relative involvement in the criminal enterprise. In response, the Government submits that the District Court is not bound to credit the defendant's statements nor to attribute to them any particular evidentiary weight. This is, of course, correct. Note 3(C) to U.S.S.G. § 3B1.2 clearly states:

> The determination whether to apply subsection (a) [minimal participant] or subsection (b) [minor participant], or an intermediate adjustment, involves a determination that is heavily dependent upon the facts of the particular case. As with any other factual issue, the court, in weighing the totality of the circumstances, is not required to find, based solely on the defendant's bare assertion, that such a role adjustment is warranted.

Obviously, we are not suggesting that the District Court must credit the defendant's statements about his own role in the criminal enterprise, nor that the Court is bound to believe the defendant's own characterization that his role was minor. *See United States v. Gault,* 141 F.3d 1399, 1404 (10th Cir.1998) (quoting *United States v. Badger,* 925 F.2d 101, 105 (5th Cir.1991)) (stating that the district court was "not bound to accept the defendant's own declarations about his level of partic-

---

3. *Garcia,* the source of the formulation, made clear that the list was not exclusive, and we

assume that the *Headley* panel did not believe it to be.

ipation in the crime"). However, as was acknowledged by the District Court itself, drug couriers are often small players in the overall drug importation scheme.[4] It stands to reason that these couriers seldom have much information on the other criminal actors. To state as a matter of law that a defendant who cannot provide corroboration for his statements can never meet the minor participant burden of proof would be tantamount to saying that those actors with the least knowledge would never be able to qualify for the minor role downward departure.[5] In this respect, the District Court erred, and the judgment must be set aside.

The second factor adopted in *Headley* is the importance of the defendant's actions to the success of the venture. In assessing the importance of Rodriguez' actions to the success of the venture, the District Court stated that it has "always maintained that a defendant who served as a courier and engages in the transport of drugs from one country to another is very integral to the success of the importation of those particular drugs." Surely, this is a truism: without the mules, drugs could not be carried into the United States. In view of this observation, the *Headley* "importance" factor may also be of less utility in mule importation cases. At all events, we need to ensure that an "integrality"

statement does not amount to a set policy as to the centrality of the drug courier's role in the criminal enterprise.

In *Isaza–Zapata*, the District Court had found that the defendant drug courier's role was "essential" and that he was therefore not entitled to a minor participant downward departure. Because the panel could not determine whether that finding had been made on the basis of a factual analysis or on a legal interpretation of the Sentencing Guidelines, it vacated the sentence and remanded for resentencing. *See Isaza–Zapata*, at 237. Similarly, in the case at bar, we find it difficult to determine whether the District Court's assertion about the integrality of drug couriers may have trumped, or at least undermined, the individual factual analysis required by the case-law.

*Headley's* third factor is the defendant's awareness of the nature and scope of the criminal enterprise. The District Court made no evaluation of Rodriguez' awareness of the nature and scope of the criminal enterprise. In all likelihood, this was because the only information available about Rodriguez' awareness of the nature and scope of the criminal enterprise came from Rodriguez' own uncorroborated statements, as explained above. Had Rodriguez been involved in a local drug ring in

---

**4.** In addressing Rodriguez at the sentencing, the District Judge said: "... his wife's admonition should have been a motivating factor not to become a courier for the drug syndicate because what happens is the couriers get caught and the people who really make the big money and are responsible, they never place themselves at risk, and it's the individuals in the lesser echelon who end up populating the prisons of the United States."

**5.** This Court has declined to adopt a *per se* rule about drug couriers, stating that a "courier's role can vary widely, and we reject any per se rule regarding the applicability of the minor role adjustment." *Isaza–Zapata*, at

242. We maintain that the inquiry into whether the minor participant adjustment is merited remains a factual inquiry and that the "district courts are allowed broad discretion in applying this section...." *Id.* at 238. While, as we have noted, the District Court is under no obligation to accept as true the defendant's own characterization of his role in the criminal scheme, it may, of course, credit the defendant's statements as to his involvement in the criminal enterprise and may, given the totality of the circumstances, make a factual determination that such statements do meet the defendant's burden of proof.

Newark, for example, there probably would have been a greater number of arrests and the participants could verify each other's roles and knowledge as to the scope of the overall scheme.

### III.

██ For the reasons explained above, the judgment must be vacated and the case remanded for resentencing. The question at once arises – what more must the District Court do on remand in view of the sparse record? A few things at least suggest themselves. The Court may wish to consider additional factors, such as whether this drug courier occurrence was a repeated activity or an isolated event. Rodriguez had made a number of prior trips to the New York area to visit his children living there. The government concedes that this is the first time Rodriguez has ever been involved in importation, though perhaps the record on this issue can be further developed. The Court may also wish to consider the amount of money the courier was to receive as an indicator of the importance of the defendant's actions to the success of the venture. Additionally, the Court may wish to delve more deeply into the defendant's likely knowledge of the identities and roles of the other actors in the conspiracy as well as his likely knowledge of the overall scope of the conspiracy.

One further point bears mention. As explained above, *see supra* note 2, the safety-valve turns on the defendant providing to the government truthful information about the scheme. Here, the District Court must have believed that the defendant was truthful in his dealings with the government in order to grant the safety-valve. Thus, the District Court's refusal to credit the defendant's statements in the minor participant context may not have been based on lack of trust in those state-ments but rather on the misperception that it was not permitted to use uncorroborated statements as proof. This factor too might be considered. As suggested above, the Court is not limited to the three *Headley* factors if it can come up with other relevant considerations.

In sum, on remand the District Court must evaluate whatever information is available to it and make the findings necessary to support its (discretionary) determination as to whether Rodriguez met his burden of establishing minor role. The task is not easy on a sparse record, but District Courts are accustomed to making difficult calls.

The judgment of sentence will be vacated and the case remanded for further proceedings consistent with this opinion.