

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-16-2004

# USA v. Lin

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-1973

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"USA v. Lin" (2004). *2004 Decisions*. Paper 497.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/497

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

<u>NOT PRECEDENTIAL</u>

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

————

No. 03-1973

————

UNITED STATES OF AMERICA

v.

LONG FEI LIN
a/k/a LIM LONG FER

Long Fei Lin,
<u>Appellant</u>

————

No. 03-1982

————

UNITED STATES OF AMERICA

v.

KONG ZHEN CHEN
a/k/a KONG CHEN ZHEN

Kong Zhen Chen,
<u>Appellant</u>

————

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Nos. 01-cr-00787-2 and 01-cr-00787-1)
District Judge:  Hon. Clarence C. Newcomer

————

Submitted Under Third Circuit LAR 34.1(a)
July 15, 2004

Before: SLOVITER, BARRY and WEIS, Circuit Judges

(Filed July 16, 2004)

OPINION OF THE COURT

SLOVITER, Circuit Judge.

Appellant Kong Zhen Chen ("Chen") appeals his conviction for conspiracy to commit hostage taking and hostage taking in violation of 18 U.S.C. § 1203(a); conspiracy to communicate in interstate commerce a demand for ransom in violation of 18 U.S.C. § 371; and communication in interstate commerce of a demand for ransom in violation of 18 U.S.C. § 875(a). Appellant Long Fei Lin ("Lin") appeals the sentence imposed by the District Court for his conviction for conspiracy to commit hostage taking and hostage taking in violation of 18 U.S.C. § 1203(a). The District Court had subject matter jurisdiction pursuant to 18 U.S.C. § 3231 and we have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). For the reasons set forth below, we will affirm.

**I.**

On November 29, 2001, Yi Kai Li ("Li") went to the Tropicana Casino in Atlantic City, New Jersey to gamble. Li lost money and asked Mei Zhu Zheng ("Zheng"), Chen's girlfriend, if he could borrow $1,000 to continue gambling. Zheng telephoned and Chen

then came to the casino. Li had previously borrowed money from Chen and his associates three times. Li told Chen that he had paid back all of the three prior loans. Chen stated that he would lend Li the requested $1,000 and told Li to follow him to his apartment to get the money.

Once they were in the apartment, Chen announced that he would not lend Li the $1,000 because Li had not repaid a previous debt that now totaled $18,600: $3,000 borrowed a year ago plus $15,600 in interest. Li insisted that he had repaid the earlier loan, but Chen claimed that he had not received the money. Chen then made several phone calls and additional people came to the apartment, one of whom was Lin.

Chen locked the door to his apartment, demanded immediate payment and forced Li to call his son, Feng Li, to secure the money. After Li informed his son that he was being detained and needed to repay $18,600, Chen told Feng Li if he did not receive the money the next day by 10:00 p.m., Chen would take Li to New York and he would be beaten to death or something else would happen.

While Li was in the apartment, Zheng did household chores, Lin guarded Li, and Chen repeatedly hit Li and questioned his desire to repay the money. At one point, Li went to the bathroom and used his own phone to call his son and tell him to call the police. That night, Chen, Lin, Zheng, and Li left the apartment to collect the money from Feng Li in Philadelphia, but they returned to Atlantic City before reaching Philadelphia or meeting Feng Li.

3

Late in the evening on November 30, 2001, FBI agents traveled with Feng Li from Philadelphia to Atlantic City to meet with Chen on the boardwalk. At approximately 3:00 a.m. on December 1, 2001, Chen, Lin, and Zheng were arrested by the FBI on the boardwalk.

In statements made after the arrest, Chen told FBI agents that Li owed him $3,000 and had been in his apartment to discuss the debt. Lin told FBI agents that he had been at Chen's apartment with Li since November 30 around 12:30 a.m., but claimed to know nothing about the kidnapping or ransom demand.

Chen, Lin and Zheng were indicted for conspiracy to commit hostage taking and hostage taking (Counts 1 and 2), and conspiracy to communicate in interstate commerce a demand for ransom for release of a kidnapped person and communication in interstate commerce of this demand for ransom (Counts 3 and 4). Chen was convicted by a jury on all four counts. Lin was found guilty on counts 1 and 2 only. Zheng was acquitted on all counts. The District Court sentenced Chen to 168 months in prison. Lin was sentenced to 97 months in prison. Both Chen and Lin filed timely notices of appeal.

## II.

Chen raises three issues on appeal.

A. <u>Ineffective Assistance of Counsel</u>

Chen asserts that his trial counsel was ineffective because she: (1) failed to move to have Chen's trial severed from his co-defendant Zheng; (2) introduced good character

4

evidence that led to admission of information regarding Chen's conviction for assault for impeachment purposes and (3) opened the door for the government to introduce evidence that Chen was a loan shark.

It has been this court's position that claims for ineffective assistance of counsel should be raised in a collateral proceeding so that the factual basis for the claim may be developed. See, e.g., United States v. Haywood, 155 F.3d 674, 678 (3d Cir. 1998). That was the approach taken more recently by the Supreme Court in Massaro v. United States, 538 U.S. 500 (2003), where the Court held that, in most cases, ineffective assistance of counsel claims should be litigated in collateral proceedings, rather than on direct appeal. Chen seeks to come within the narrow exception to our rule whereby we may address claims of ineffective assistance of counsel on direct appeal if the record is sufficiently developed to allow determination of the issue. United States v. Headley, 923 F.2d 1079, 1083 (3d Cir. 1991). This is not such a case because the record is insufficient for us to determine whether there was a reasonable basis for Chen's counsel's trial tactics or whether any of her strategic decisions or performance resulted in prejudice to Chen. We will deny Chen's claim for ineffective assistance of counsel without prejudice to his right to pursue the claim in a collateral proceeding.

B. Admission of Prior Uncharged Conduct

Chen next argues that the District Court erred in permitting the introduction of evidence concerning his prior acts of violence against Zheng. Chen did not object at trial,

5

and therefore we review the District Court's admission of the evidence for plain error. See United States v. McGlory, 968 F.2d 309, 346 n.24 (3d Cir. 1992). "[P]lain error occurs only when there is 'egregious error or a manifest miscarriage of justice.'" United States v. Tsai, 954 F.2d 155, 161 (3d Cir. 1992) (quoting United States v. Thame, 846 F.2d 200, 204 (3d Cir. 1988)).

Chen asserts that the admission of evidence of his prior violent acts against Zheng was plain error because it was introduced to show his bad character and propensity to commit crime. Evidence of other crimes may be admitted for the purposes of proving, among other things, motive, opportunity and intent. Fed. R. Evid. 404(b). Although evidence of other crimes can be relevant, it may be "excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ." Fed. R. Evid. 403.

In this case, the District Court allowed counsel for Zheng to introduce evidence of Chen's prior assault to establish her intent pursuant to Rule 404(b). Zheng was seeking to prove that she did not intend to participate in the kidnapping, was merely present, and did not try to stop Chen or leave because she was afraid of him due to past domestic violence. This evidence was not introduced to impugn the character of Chen, but rather to establish Zheng's defense of mere presence at the kidnapping. See, e.g., United States v. McGlory, 968 F.2d 309, 325 (3d Cir. 1992). The admission of Zheng's intent evidence was thus in accord with Rule 404(b).

6

Furthermore, any potential prejudice or jury confusion that may have been caused by the introduction of evidence of Chen's prior assault on Zheng was addressed by the District Court's instructions to the jury that it could consider Zheng's defense of mere presence, but "not consider evidence that a defendant may have committed an act at one time . . . to determine that a defendant acted in conformity with that act in this case." Chen App. at 292. These instructions direct the jury to consider evidence of Chen's prior assault on Zheng only as it relates to Zheng's intent and presence during the kidnapping. Therefore, any prejudice that may have resulted from admitting evidence of Chen's prior assault was cured by the jury charge.

C. Jury Instructions Regarding Character Evidence

At trial, Chen did not properly object to the District Court's jury instructions on the use of character evidence. We therefore review the District Court's jury charge for plain error. See United States v. Gordon, 290 F.3d 539, 542-543 (3d Cir. 2002).

Chen contends that the District Court plainly erred in failing to instruct the jury that good character evidence, standing alone or with other evidence, may create a reasonable doubt as to a defendant's guilt. Our decision in United States v. Spangler, 838 F.2d 85 (3d Cir. 1988), is dispositive of this issue. In Spangler, we held that a jury charge on character evidence must only call the jury's attention to its duty to take character evidence into account with all other evidence in deciding whether the government has proved its charge beyond a reasonable doubt. Id. at 86-87. However, district courts are

7

not required to instruct a jury that character evidence, standing alone, is sufficient to create a reasonable doubt. Id. at 87. In the present case, the District Court charged the jury on character evidence as follows:

> You have heard testimony that a defendant has a good reputation in his community for being honest and law-abiding. You may consider such evidence, along with all other evidence in the case, in reaching your verdict. Evaluate such character evidence, along with all of the other evidence in this case, in deciding whether the government has proved the crime charged beyond a reasonable doubt.

Chen App. at 291-92. This charge clearly drew the jury's attention to its duty to properly consider character evidence and largely mirrors the jury charge that we upheld in Spangler. The District Court's jury instruction on the use of character evidence was not clearly erroneous.

## III.

We exercise plenary review where a district court's denial of a downward adjustment is based primarily on a legal interpretation of the Sentencing Guidelines. United States v. Isaza-Zapata, 148 F.3d 236, 237 (3d Cir. 1998). However, where a district court's decision rests on factual determinations, we review the decision for clear error. Id. Because the District Court's denial of Lin's motion for downward reduction rested upon factual determinations, we undertake clear-error review.

Lin contends that the District Court erred in refusing to grant him a two-level minor role adjustment pursuant to Section 3B1.2(b) of the United States Sentencing Guidelines. Lin claims that the District Court failed to consider all relevant evidence in

8

denying his motion for a minor role adjustment and simply adopted the prosecutor's characterization of Lin as "integral in the conspiracy." Lin Br. at 18.

In Headley, supra, we considered the following principles as relevant to the determination of whether a defendant is a minor participant in an offense: "'the nature of the defendant's relationship to the other participants, the importance of the defendant's actions to the success of the venture, and the defendant's awareness of the nature and scope of the criminal enterprise.'" 923 F.2d at 1084 (quoting United States v. Garcia, 920 F.2d 153 (2d Cir. 1990)). The district court need not explicitly weigh each Headley factor independently, but the record should support its decision. United States v. Carr, 25 F.3d 1194, 1208 (3d Cir. 1994).

First, Lin argues that there is no evidence in the record that he had any prior dealings with Li. However, the first Headley factor focuses upon a defendant's relationship with other participants, not with the victim. The relevant inquiry thus focuses upon Lin's prior dealings with Chen, not Li. Lin stayed overnight at Chen's apartment during Li's detention, accompanied Chen and Li on the failed trip to Philadelphia, and walked with Li and Chen on the boardwalk to meet with Feng Li and receive the ransom. These facts taken together suggest that Li had a pre-existing relationship with Chen.

Second, Lin's role as Li's guard was integral to the success of this kidnapping. Because Li was not physically restrained during his detention, it was imperative that someone watch him to prevent his escape. Lin performed this function and ensured that

9

Li did not escape before Feng Li delivered the money. According to Li, Lin watched him the entire night, did not sleep, and remained in close proximity to him during the detention, thus performing a critical role.

Third, Lin argues that, at most, he had only a passing understanding of the nature and scope of Chen's criminal objective. While Lin may not have known a great deal about Chen's loan shark activities, it is highly unlikely that he had only a passing understanding of why Li was being detained. The same facts that suggest he had some type of relationship with Chen also suggest that he had an understanding of why Li was being held captive. In particular, Lin's presence in the car to Philadelphia and on the boardwalk suggest that Lin knew Li was being held to pay an outstanding debt and would only be released upon payment. Based on these three factors the District Court did not clearly err by denying Lin's motion for a downward departure. See Carr, 25 F.3d at 1208.

**IV.**

For the foregoing reasons, we will affirm the judgments of the District Court.

10