NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-1801
_____

UNITED STATES OF AMERICA

v.

ANTHONY CALCAGNI,
                              Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 5-08-cr-00743-002)
District Judge: Honorable Lawrence F. Stengel
_____

Submitted Under Third Circuit LAR 34.1(a)
April 11, 2014

Before:  HARDIMAN, SHWARTZ, and BARRY, Circuit Judges

(Filed: June 9, 2014 )
_____

OPINION
_____

HARDIMAN, Circuit Judge

Anthony Calcagni appeals the District Court's order dismissing his request for

collateral relief, which found that his counsel was not ineffective.  We will affirm.

I

On August 5, 2008, burglars broke into the home of Calcagni's girlfriend's parents, Toby and Julie Merritt, and stole fourteen guns, $14,000 in savings bonds, and an assortment of collectible coins and stamps. That same day, Calcagni and his co-conspirators delivered twelve of the guns and ammunition to a purchaser with the help of a confidential government informant (CI). The next day, Calcagni and Joshua Foster sold the thirteenth gun to the CI, who gave them $1,000 in prerecorded bills in exchange. After this sale, the four accomplices went to a shoe store, where Calcagni and Foster bought two pairs of shoes with the money they had just acquired. Shortly thereafter, officers pulled them over in a traffic stop. Calcagni was arrested and searched for weapons, whereupon the officer found various old coins and additional assorted coins in plastic sheets on his person. These were later identified as the coins stolen from the Merritts' home. On August 8, 2008, the CI called Foster to arrange the sale of the fourteenth firearm, which Calcagni and several others delivered to the CI three days later.

On December 16, 2008, Calcagni was charged with three counts of possessing and selling stolen firearms and aiding and abetting, in violation of 18 U.S.C. §§ 922(j) and 2; one count of conspiracy, in violation of 18 U.S.C. § 371; and one count of dealing in firearms without a license, in violation of 18 U.S.C. § 922(a)(1)(A). Burglary was not an element of any of these crimes. The government needed only to prove that Calcagni knowingly possessed firearms that he knew were stolen, and that he lacked a license to

sell guns.

On May 20, 2009, the District Court held a change of plea hearing where Calcagni pleaded guilty to each count of the indictment. As part of his plea agreement, Calcagni waived his right to appeal and to collateral relief except in limited circumstances. At the plea hearing, the District Court conducted a colloquy with Calcagni to establish that his guilty plea had a factual basis, and that it was given voluntarily, knowingly, and intelligently. The guilty plea colloquy began in routine fashion. When the prosecutor finished her recitation of the facts of the case, Calcagni was given an opportunity to admit those facts or correct any errors. He corrected an inaccuracy in the prosecutor's statement relating to the August 8, 2008, conversation between Foster and the CI. The prosecutor had stated that Foster told the CI that Calcagni had burglarized the Merritt home and stolen the guns; Calcagni clarified that Foster had *not* identified him as a participant in the burglary during that call. Calcagni was well within his rights to correct this fact, and the prosecution has since admitted as much.

Unfortunately for Calcagni, the District Court seized on this as an opportunity to ask him point blank whether he had committed the burglary, a separate state crime for which he was under investigation at the time he was in federal court pleading guilty to the federal charges. The following colloquy ensued:

CALCAGNI: Foster never said that me and him stole the guns from the house.
THE COURT: All right.
CALCAGNI: He never said that in the conversation.
THE COURT: All right. Did you, in fact, steal the guns from the house?

CALCAGNI: No, Your Honor.

THE COURT: How did you get the guns? You don't want to play around with me, Mr. Calcagni.

CALCAGNI: I'm not playing around.

THE COURT: I want to hear how you got the guns, I want to hear what the factual basis for this charge is.

CALCAGNI: Somebody got them—

THE COURT: How did you get them?

CALCAGNI: I was around. People had them—

THE COURT: Somebody got them and you were around?

CALCAGNI: I was around. Like I didn't get the guns. Like I was there when they went to go be sold.

DEFENSE COUNSEL: I believe Mr. Calcagni is saying that he did not go into his girlfriend's residence to get the guns, Your Honor, that somebody else did—

THE COURT: Were they obtained from the ex-girlfriend's residence?

DEFENSE COUNSEL: Yes, Your Honor.

CALCAGNI: [Y]es, that's correct.

THE COURT: And you did not go in to get the guns?

CALCAGNI: No.

A81-82. Two transcript pages later, after further questioning Calcagni about his involvement in the sale of the guns, the trial judge once again pressed Calcagni to disclose how the guns were obtained. Calcagni responded: "I had a feeling, like I knew, but I don't know." A84. At that point, defense counsel intervened and asked the Court's permission to question his client; he then proceeded to ask Calcagni about the transfer and sale of the guns. During this round of questioning, Calcagni equivocated about his role in the crime, claiming that he did not participate but was present during, and aware of, the illegal exchange. The trial judge then asked Calcagni if he was aware that these were stolen guns. Calcagni replied that he was.

At this point, the trial judge asked the prosecutor if there was anything she wished

4

to add. She responded by noting that the coins were stolen along with the guns and were found on Calcagni's person. The trial judge asked Calcagni if this was true; he responded that the coins had been his grandmother's. At this point, it became clear—if it wasn't already—that Calcagni had likely been involved in the burglary and that some of his prior testimony was probably perjured. Shortly after this exchange, the trial judge accepted Calcagni's guilty plea, which he found to be knowing and voluntary.

In its revised presentence report (PSR), the Probation Office determined Calcagni had a base offense level of 12 and applied several enhancements: four levels because the offense involved more than eight firearms; two levels because the firearms were stolen; four levels because the firearms were trafficked; four levels because the firearms were possessed in connection with another felony (the burglary); and two levels for obstruction of justice. In addition, because of Calcagni's perjured testimony, the Probation Office did not adjust downward for acceptance of responsibility, as the original PSR had provided. Calcagni's adjusted offense level was 28. At his first sentencing hearing on July 8, 2010, the District Court accepted the PSR but rejected the two-level enhancement for stolen firearms, leaving Calcagni with a final offense level of 26 and a Guidelines range of 70 to 87 months.

During the second sentencing hearing on July 12, 2010, Calcagni requested new counsel, complaining that his counsel provided ineffective assistance by allowing him to respond to questions about the burglary at the plea hearing. Counsel stated that he and

Calcagni had agreed beforehand not to answer questions about the burglary, but that the trial judge's line of questioning took him by surprise and he failed to intervene as a result. Counsel also explained that his strategy for defendants who plead guilty is to have them respond to questions "as long as they are responding honestly and truthfully," as this is better, in his view, than having them assert the Fifth Amendment during the plea proceeding. A313. He noted that in hindsight, it would have been wiser to prevent his client from answering these questions, as Calcagni "got[] himself into some trouble by speaking." A313-14.

At his third and final sentencing hearing on September 9, 2010, Calcagni was sentenced to 72 months' imprisonment, three years of supervised release, a $500 fine, and a $500 special assessment.

On direct appeal to this Court, Calcagni claimed his counsel rendered ineffective assistance at his guilty plea hearing by allowing the court to question him about the burglary. *See United States v. Calcagni*, 441 F. App'x 916 (3d Cir. 2011). We dismissed that appeal, enforcing the appellate waiver as to his sentence while declining to review his ineffective assistance claim. *Id.*

Calcagni then sought collateral review of his ineffective assistance of counsel claim under 28 U.S.C. § 2255, which the District Court denied without conducting an evidentiary hearing, concluding that Calcagni had not established ineffective assistance of counsel and had waived his right to collaterally attack his sentence. Calcagni filed this

6

timely appeal.

## II[1]

Calcagni alleges he received ineffective assistance of counsel because his lawyer, Albert Raman, failed to advise him of the consequences of waiving his Fifth Amendment right against self-incrimination.[2] To prevail on an ineffective assistance of counsel claim, a petitioner must show that counsel's performance was deficient and that it prejudiced the defendant such that there was a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *United States v. Headley*, 923 F.2d 1079, 1083 (3d Cir. 1991) (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)).

At the sentencing hearing, Calcagni's trial counsel testified that he had, prior to the plea hearing, advised Calcagni not to speak about the burglary. Unfortunately for Calcagni and his counsel, the judge pressed this line of questioning and Calcagni answered without objection from counsel. Once that happened, counsel's "strategy was that if Mr. Calcagni wanted to respond to the questions, that that was his decision to make." A313. The District Court—the same judge who heard the plea hearing initially— found that this strategy was reasonable, but confused the need for Calcagni to admit that

---

[1] The District Court had jurisdiction under 28 U.S.C. § 2255. We have jurisdiction under 28 U.S.C. § 1291.

[2] Both parties agree that Calcagni's appellate waiver should not preclude his ineffective-assistance claim, as the government did not seek to enforce the waiver.

he knew the guns were stolen (an element of the crime)—with a need to hear Calcagni

admit that he himself stole the guns (a fact irrelevant to his plea).[3]

Though the District Court's questioning was broader than necessary for purposes

of Calcagni's plea hearing, it was correct in finding that Calcagni's counsel's

performance did not fall below the constitutional minimum.

As attorney Raman conceded at the sentencing hearing, with the benefit of

hindsight, he should have interjected and prohibited Calcagni from answering the judge's

question. However, we do not assess the effectiveness of counsel's assistance in

hindsight, but rather "evaluate the conduct from counsel's perspective at the time."

*Strickland*, 466 U.S. at 689.

---

[3] The District Court articulated its reasoning as follows:

> During the discussion of the facts of this case at the guilty plea hearing, it was apparent to the Court that Calcagni was equivocating about the facts of this case. His answers to questions were illusive . . . . I pressed him to discuss where the guns came from because his initial response was that he might have known that the guns were stolen. One of the elements of the three counts to which he was pleading was that he had knowledge that the guns he was trafficking were stolen guns. From the circumstances of this case, it was hard to believe that Calcagni did not know that the guns were stolen. In fact, it was hard to believe that he did not participate in the theft of the guns, given that they had come from the home of his ex-girlfriend, and were taken when the Merritt family was out of town . . . .
>
> Because he equivocated, was evasive in his answers, and was reluctant to acknowledge facts necessary to support the charges to which he was pleading, it was entirely appropriate for the Court to ask him questions about his knowledge of the theft of the guns.

A28-29.

There is nothing in the record to indicate that attorney Raman knew his client was lying to the court. And we cannot assume, absent any evidence to the contrary, that counsel knew his client was guilty of the burglary at the time of the guilty plea hearing and allowed him to perjure himself. Absent that assumption, we cannot agree with Calcagni's argument on appeal that his counsel subjected him to either the Scylla of incrimination or the Charybdis of perjury. At the time Calcagni spoke, it was possible that he responded truthfully to the Court's question.

Moreover, counsel's conduct was consistent with a reasonable strategic choice to salvage the plea. Counsel explained that his strategy for defendants who enter guilty pleas is to allow them to answer questions as he believes it is better for them to provide a truthful answer than assert the Fifth Amendment. This is entirely reasonable, as preserving the plea was in Calcagni's interest and served to limit his sentence. The plea agreement explains that the total maximum sentence for these counts was 40 years' imprisonment, but pursuant to the plea, the government agreed to stipulate that, as of the date of the agreement, Calcagni had demonstrated acceptance of responsibility, thereby resulting in downward adjustments under the Sentencing Guidelines for a possible sentence of 30 to 37 months.[4] The fact that Calcagni did not ultimately end up qualifying for these downward adjustments does not change the fact that it was reasonable for

---

[4] At the change of plea hearing, it was contemplated that Calcagni's Guidelines range would be 30 to 37 months based on the erroneous assumption of a Criminal History Category of I. He was later determined to be a Category II, with a Guidelines range of 70 to 87 months.

counsel to attempt to salvage this agreement.

Because Calcagni has not alleged that counsel knew he committed the burglary, and the record shows that he made a reasonable strategic choice, Calcagni cannot establish ineffective assistance of counsel.  Accordingly, we will affirm the judgment of the District Court.