NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-2865
_____

UNITED STATES OF AMERICA

v.

JEREL JACKSON, a/k/a Jinx

Jerel Jackson,
                              Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
District Court No. 2-13-cr-00622-001
District Judge: The Honorable C. Darnell Jones, II

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
September 25, 2017

Before: SMITH, *Chief Judge,* McKEE, and RESTREPO, *Circuit Judges*

(Filed:  October 18, 2017)
_____

OPINION[*]
_____

_____

[*] This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does
not constitute binding precedent.

SMITH, *Chief Judge.*

On November 14, 2013, a grand jury returned a three-count indictment against Jerel Jackson alleging sex trafficking of three individuals, one a minor, in violation of 18 U.S.C. §§ 1591 and 1594(a). Ten months later, on September 19, 2014, Jackson's appointed counsel sought leave to withdraw and new counsel was appointed. A superseding indictment was filed in January of 2015, and a second superseding indictment followed in February, asserting a total of five counts of sex trafficking, with two of the counts alleging that the victim was a minor.

On March 18, 2015, after a thoughtful and extensive plea colloquy with the District Court, Jackson pleaded guilty to the five-count second superseding indictment. Early on in the proceeding, the District Court asked Jackson why he was pleading guilty. Jackson responded by saying: "I'm pleading guilty because I am guilty." JA123. Once the District Judge carefully reviewed the rights that Jackson would waive if he pleaded guilty, he asked Jackson: "[D]o you still want to give up your right to a trial and enter a plea of guilty?" JA137. Jackson responded affirmatively. The judge followed this question by inquiring if Jackson was "sure," and Jackson affirmed that he was. Then the judge asked if Jackson had "[a]ny question in your mind about this?" JA138. Jackson confirmed he did not. The government then made a detailed proffer of the factual basis for the plea. In response to the Court's inquiry, Jackson confirmed that he wanted to enter a guilty plea and

2

that he was making that decision of his own free will because he was guilty. JA144-45. The Court asked Jackson how he wished to plead. Jackson answered: "Guilty." JA146. Then, the District Court asked Jackson how he was pleading as to each of the five counts. Jackson responded "Guilty" five times. JA146-47. The Court proceeded to enter its findings on the record, which included that Jackson's plea was knowing and voluntary. It accepted Jackson's plea and adjudged him guilty of the five counts. JA147.

In November of 2015, Jackson requested the appointment of new counsel. The District Court conducted a hearing on the request. JA153. During that hearing, Jackson advised the court that he "wasn't trying to withdraw a guilty plea at all. . . . That's not what I'm trying to do. . . . [A]ll I ask for is what you just did, is just give me counsel so I can consult . . . and see if that's what I should . . . do." JA176.

More than a year after pleading guilty, on May 16, 2016, and before sentencing, Jackson filed a motion to withdraw his guilty plea. Jackson asserted he was innocent of all charges filed against him and always wanted to proceed to trial and have his innocence established. JA52. The District Court denied the motion. Thereafter, the Court sentenced Jackson to 30 years' imprisonment and 5 years' supervised released. This timely appeal followed.[1]

---

[1] The District Court exercised jurisdiction under 18 U.S.C. § 3231. We exercise appellate jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

On appeal, Jackson argues that: (1) counsel was ineffective for permitting him to enter a guilty plea; (2) the District Court abused its discretion by denying the motion to withdraw his guilty plea; and (3) his sentence was improperly calculated. For the reasons set forth below, we will affirm Jackson's convictions, but vacate his sentence and remand for resentencing.

At the outset, we decline Jackson's invitation to review his ineffective assistance of counsel claim. "It has long been the practice of this court to defer the issue of ineffectiveness of trial counsel to a collateral attack." *United States v. Thornton*, 327 F.3d 268, 271 (3d Cir. 2003). Indeed, the Supreme Court has endorsed this approach. *Massaro v. United States*, 538 U.S. 500, 504-06 (2003).

Jackson contends that his counsel was ineffective because they failed to move for the dismissal of the allegedly deficient indictment. According to Jackson, this presents a legal question that may be addressed in a direct appeal. *United States v. Headley*, 923 F.2d 1079, 1083 (3d Cir. 1991). We appreciate this argument, but we do not agree that this is strictly a legal question. If there is legal error, "[t]he court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland v. Washington*, 466 U.S. 668, 690 (1984). Because there were three attorneys who represented Jackson in the trial court, we believe that the record

4

should be further developed in order to resolve the deficient performance prong and that the District Court should address this ineffectiveness claim in the first instance.

Jackson also argues on appeal that the District Court erred in denying his motion to withdraw his guilty plea. In determining whether to grant Jackson's motion, the District Court appropriately considered "(1) whether [Jackson] asserts his innocence; (2) the strength of [Jackson's] reasons for withdrawing the plea; and (3) whether the government would be prejudiced by the withdrawal." *United States v. Jones*, 336 F.3d 245, 252 (3d Cir. 2003). The Court found that Jackson's "subsequent proclamations of innocence are not credible." JA11. It further concluded that Jackson's "bases for the withdrawal request are lacking in factual and legal merit; and a tremendous potential for prejudice will likely result if the government is required to litigate this case at this time." *Id.*

We are highly deferential to the District Court's credibility determinations and reverse only upon a showing of clear error. *Covertech Fabricating, Inc. v. TVM Bldg. Prods., Inc.*, 855 F.3d 163, 173 (3d Cir. 2017). We review for abuse of discretion a District Court's decision to deny such a motion. *Jones*, 336 F.3d at 252. In light of the record before us, we conclude that the District Court did not err, clearly or otherwise, in making its adverse credibility finding regarding Jackson's proclaimed innocence. Because "[b]ald assertions of innocence . . . are insufficient to permit a defendant to withdraw [his] guilty plea," we will not disturb the District

5

Court's order denying the motion.[2] *United States v. Brown*, 250 F.3d 811, 818 (3d Cir. 2001).

Finally, Jackson points out that his sentencing range was erroneously calculated in applying U.S.S.G. § 3D1.4 to obtain the combined offense level. Here, although the District Court correctly determined that five units were present, it incorrectly increased the combined level offense adjustment to five levels rather than the proper four levels. JA206. The government concedes that Jackson's guideline range was erroneously calculated and that this miscalculation affected his substantial rights. Accordingly, we will vacate the sentence and will remand the case to the District Court for resentencing. *See United States v. Mateo-Medina*, 845 F.3d 546, 550 (3d Cir. 2017) (acknowledging that we generally vacate a procedurally deficient sentence and remand for resentencing).

---

[2] In addition, our review of the record reveals that the District Court's credibility assessment also has support from statements Jackson made at sentencing. He acknowledged that, contrary to his family's belief that he was entirely innocent, he was guilty of some of the things or some of the counts that I'm being charged with. But I can assure you that I never once in my life forced a woman to do anything sexual . . . ." JA226. He also confirmed that he "wanted to withdraw [my guilty plea] . . . even though I know for a fact that I am guilty of certain things that I did." JA233.