NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-2938
_____

UNITED STATES OF AMERICA

v.

MANUEL MARTIN PENA,

Appellant
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
District Court No. 2-15-cr-00190-004
District Judge: The Honorable Donetta W. Ambrose

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
September 24, 2018

Before: SMITH, *Chief Judge,* McKEE, and RESTREPO, *Circuit Judges*

(Filed: October 16, 2018)
_____

OPINION[*]
_____

SMITH, *Chief Judge.*

Manuel Pena pleaded guilty to conspiring to misbrand and smuggle drugs in

violation of 18 U.S.C. § 371 and to conspiring to import schedule IV controlled substances

_____

[*] This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

in violation of 21 U.S.C. § 963.  The probation officer calculated a 30 to 37 month advisory sentencing range under the United States Sentencing Guidelines (U.S.S.G.).  The District Court granted a downward departure for Pena's age and health under U.S.S.G. §§ 5H1.1 and 5H1.4, denied a downward variance, and sentenced Pena to 15 months of imprisonment.  This timely appeal followed.[1]  For the reasons set forth below, we will affirm.

I.

Appellant Manuel Martin Pena is a 64-year-old Venezuelan national who has lived periodically in the United States since 1974.  Pena suffered a stroke in 2001.  In 2008, he returned to the United States to be closer to his family, ultimately becoming a lawful permanent resident.  Thereafter, Pena worked a number of small jobs, but was limited by his poor health.

In November of 2012, Pena met Roberto Galeano, a Costa Rican.  Galeano worked for a company called "CDR Marketing," a Costa Rican corporation.  CDR Marketing received internet medication orders from customers in the United States and fulfilled those orders by shipping misbranded medications from India.  Neil Russell, a resident of Pittsburgh, Pennsylvania, received some of the shipments from India and then re-shipped the medications to CDR customers.

Galeano offered Pena a job working with CDR Marketing, which Pena accepted.  After Russell stopped working with CDR, Pena became the primary re-shipper of

---

[1] The District Court had subject matter jurisdiction pursuant to 18 U.S.C. § 3231.  We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

medications within the United States. To facilitate his new role, Pena opened a number of post office boxes around his home in Houston, Texas, thereby enabling him to receive larger shipments without arousing suspicion. Upon receipt of the packages, Pena inventoried their contents, repackaged them—with false labels and descriptions such as "health products sample"—into individual orders, and shipped them to CDR's customers within the United States.

Law enforcement agents executed a controlled buy, which implicated Pena. Agents then initiated surveillance of Pena's home, eventually executing a search warrant. The search found tens of thousands of pills in Pena's home. Pena, present at the time of the search, admitted his participation in the CDR Marketing conspiracy. A grand jury returned an 11-count indictment against the members of the conspiracy. Pena was charged in counts nine and ten of the indictment, and entered an open guilty plea to conspiring to misbrand and smuggle drugs in violation of 18 U.S.C. § 371 and to conspiring to import schedule IV controlled substances in violation of 21 U.S.C. § 963.

The Probation Office prepared a pre-sentence investigation report (PSR), which calculated a sentencing guideline range of 30 to 37 months. Pena objected to the PSR, arguing that he was entitled to the mitigating role reduction under U.S.S.G. § 3B1.2. At sentencing, defense counsel presented argument that addressed each of the five factors listed in the commentary to § 3B1.2. *See* U.S.S.G. § 3B1.2 cmt. n.3(C), *amended by* U.S.S.G. Appendix C, Amendment 794 (2015). The District Court rejected Pena's assertion that he had a minor role, stating that it did "not find him to be substantially less culpable than other members of the conspiracy. . . . he played an integral, critical,

3

significant role in receiving, storing, and reshipping these drugs." A120. But the Court did grant a downward departure based on Pena's age and health under U.S.S.G. §§ 5H1.1 and 5H1.4. After denying a variance, the Court sentenced him to a term of 15 months of imprisonment.

## II.

The District Court, according to Pena, erred in its analysis of whether a § 3B1.2 downward adjustment for his minor role in the conspiracy was warranted. He contends that the Court erred by focusing on the integral nature of his role in the conspiracy, instead of addressing the five factors added by the 2015 Amendment to § 3B1.2.[2] *See* U.S.S.G. § 3B1.2 cmt. n.3(C). Pena points out that the notes to the amendment signal the Commission's desire to end consideration of a defendant's integral role in a conspiracy when determining culpability,[3] thereby rendering the Third Circuit's existing test in *United States v. Headley* outdated, 923 F.2d 1079, 1084 (3d Cir. 1991), and the District Court's analysis erroneous. We review the District Court's interpretation of the Sentencing Guidelines *de novo*, and review its findings of fact for clear error. *United States v. Grier*,

---

[2] The "non-exhaustive list of factors" to be considered are:
> (i) the degree to which the defendant understood the scope and structure of the criminal activity; (ii) the degree to which the defendant participated in planning or organizing the criminal activity; (iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority; (iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts; and (v) the degree to which the defendant stood to benefit from the criminal activity.

U.S.S.G. § 3B1.2 cmt. n.3(C).
[3] *See* U.S.S.G. Appendix C, Amendment 794 (Apr. 30, 2015).

4

475 F.3d 556, 570 (3d Cir. 2007) (en banc).

In *Headley*, we embraced the Second Circuit's analysis for determining a defendant's culpability by considering "'such factors as the nature of the defendant's relationship to other participants, the importance of the defendant's actions to the success of the venture, and the defendant's awareness of the nature and scope of the criminal enterprise.'" 923 F.2d at 1084 (quoting *United States v. Garcia*, 920 F.2d 153, 155 (2d Cir. 1990)). The 2015 Amendment, as Pena indicates, laments that courts nationwide overemphasized the integral nature of a defendant's role when deciding whether to award the mitigating role reduction. Although Pena views *Headley*'s approach as outdated in light of the "non-exhaustive" five factors now listed in § 3B1.2, we conclude that the 2015 Amendment does not foreclose consideration of the integral nature of the defendant's role or the factors set out in *Headley*. The commentary to § 3B1.2 instructed, both before and after the amendment, that the determination of whether an adjustment is warranted is "based on the totality of the circumstances." *Compare* U.S.S.G. § 3B1.2, cmt. n.3(C) (2011), *with* U.S.S.G. § 3B1.2, cmt. n.3(C) (2015). Moreover, the five-factor list added in 2015 overlaps with and expands upon *Headley*'s factors. Accordingly, we conclude that the District Court, which heard defense counsel's argument addressing each of the five factors, did not apply an outdated analysis. Because the District Court meaningfully considered the totality of the circumstances in assessing Pena's role, there is no reason to disturb the District Court's finding regarding Pena's culpability.

III.

At sentencing, Pena also requested a downward variance to account for his likely

5

deportability following his imprisonment. The District Court declined to vary downward on this basis. It acknowledged that Pena would likely be deported but explained that his "immigration status is really nothing that I can do anything about because I have no assurance that you will be or will not be deported. . . . So that may or may not happen . . . but I don't really factor it greatly into the sentence that I pronounce today." A153.

On appeal, Pena asserts that the District Court "ignored, slighted, or mis-weighed" his deportability in considering the sentencing factors, resulting in a substantively unreasonable sentence.[4] Appellant's Br. at 14, 33. Pena's assertion that the District Court "ignored" his deportability is belied by the sentencing transcript quoted above, which shows that Pena's deportability was explicitly considered. Given the Court's explanation and the generous downward departure Pena received based on his age and health, there is no basis for concluding the 15 month sentence was unreasonable.

For the reasons set forth above, we will affirm the judgment of the District Court.

---

[4] We review for an abuse of discretion and will affirm "unless no reasonable sentencing court would have imposed the same sentence . . . for the reasons the district court provided." *United States v. Tomko*, 562 F.3d 558, 568 (3d Cir. 2009) (en banc).