NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0065n.06
Filed: January 29, 2009

No. 06-4482

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

VICTOR MANUEL QUIJADA,

    Defendant-Appellant.

                          /

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF OHIO

BEFORE:    BOGGS, Chief Judge, and CLAY, Circuit Judge; BERTELSMAN, District Judge.[*]

    **CLAY, Circuit Judge.**  Pursuant to a plea agreement with the government, Defendant Victor Manuel Quijada pleaded guilty to conspiracy to distribute over five kilograms of cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(ii), and 846. Quijada now appeals the November 9, 2006 judgment of the United States District Court for the Southern District of Ohio, imposing a 156-month sentence of imprisonment. Quijada argues that the sentence imposed was both procedurally and substantively unreasonable. For the reasons that follow, we **AFFIRM** the judgment of the district court.

---

    [*]The Honorable William O. Bertelsman, United States District Judge for the Eastern District of Kentucky, sitting by designation.

## BACKGROUND

**A.     Procedural History**

On October 27, 2005, a federal grand jury returned a five-count superseding indictment charging Victor Manuel Quijada and four other defendants with violations of federal narcotics laws.  The indictment charged Quijada with conspiracy to distribute over five kilograms of cocaine and with possession with intent to distribute cocaine in violation of in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(ii), and 846, and 18 U.S.C. § 2.  The indictment also sought the forfeiture of $2,115,566.99 in United States currency seized by the government.

On May 25, 2006, pursuant to a plea agreement, Quijada pleaded guilty to the conspiracy count, accepted responsibility for the offense, and agreed to the forfeiture of the funds that were seized.  Quijada also agreed that his relevant conduct fell within a drug quantity range of 50 to 150 kilograms of cocaine.

Quijada's final Presentence Investigation Report calculated an advisory sentencing guidelines ("Guidelines") range of 188 to 235 months of imprisonment, based on a total offense level of 33 and a criminal history category of IV.  Quijada filed objections to the report, arguing that he was entitled to a lower sentence based on mitigating offender characteristics and circumstances, including his family obligations, his minimal role in the offense, and his level of cooperation.  He also argued that the assigned criminal history category significantly over-represented the seriousness of his criminal history.  He sought a Guidelines offense level of 21 and a criminal history category of I, which would have resulted in a Guidelines range of 37 to 46 months.

At sentencing, the district court reduced Quijada's criminal history category by one level but denied a mitigating role reduction, thereby establishing a new Guidelines range of 168 to 210 months. The court sentenced Quijada to 156 months of imprisonment and five years of supervised release, and Quijada filed a timely notice of appeal.

## B. Substantive Facts

At Quijada's plea hearing, the government summarized the facts of the case and Quijada agreed with the facts as stated. The relevant facts are provided below.

In July 2005, a cooperating individual informed the Columbus police narcotics bureau that a man identified as Walter Brown was receiving large shipments of cocaine from a tractor-trailer that parked in a parking lot on the far east side of Columbus. A surveillance team was established, and on July 21, 2005, Brown was seen meeting a number of times with Edgardo Flores, who was driven to a number of locations by LaTrisha Evans. On the same day, officers observed Brown, Flores, and Evans drive to the parking lot that had been described by the informant, followed by a Chevrolet Tahoe driven by Carlos Villavisencio.

Shortly before the two vehicles arrived at the parking lot, a black Ford F150 and a red truck pulling a silver trailer pulled into the lot. The F150 was driven by Quijada and Jesus Contreras-Cordova, and the red truck was driven by Miguel Reyes-Guevara and Francisco Javier Sanchez-Perez. Surveillance officers observed the parties exit the trucks and meet near the large truck, at which point a law enforcement team took the eight individuals into custody.

Officers retrieved a switch from the F150 driven by Quijada. The switch plugged into the rear of the trailer being pulled by the red truck and operated a hydraulic lift that concealed a number of hidden compartments. The officers found 126.9 kilograms of cocaine determined to

be of 82 percent purity in the trailer. Officers also recovered over $2,100,000 of U.S. currency from the back of the Tahoe driven by Villavisencio.

Subsequent investigation revealed that many of the aforementioned individuals, including Quijada, had stayed in Columbus hotels in May, June, and July of 2005. The government alleged that on these occasions, more than 100 kilograms of cocaine were brought to Columbus and distributed to Brown by Flores. As to the relevant conduct of the involved parties, it was determined that Quijada drove Contreras-Cordova to Columbus three times and that his truck carried the hydraulic switch. The government had no information that Quijada was an owner of any of the cocaine or that he was to receive any of the proceeds from its sale.

The government also learned that on at least one occasion in June 2005, a large quantity of United States currency was packed into the trailer and driven to Phoenix by Reyes-Guevara and removed by the people who owned the trailer, who were not any of the defendants charged in this case.

Many of the aforementioned parties received sentencing departures based on their cooperation with the government, but the government determined that Quijada failed to cooperate and that he was not eligible for a sentencing reduction on that basis.

## DISCUSSION

On appeal, sentences are reviewed for reasonableness under an abuse of discretion standard. *United States v. Booker*, 543 U.S. 260-61 (2005); *United States v. Sedore*, 512 F.3d 819, 822 (6th Cir. 2008). To determine overall reasonableness, this Court must examine the procedural and substantive aspects of the sentencing court's decision. *United States v. Jones*, 445 F.3d 865, 869 (6th Cir. 2006).

First, an appellate court must ensure that the district court did not commit significant procedural error, such as:

> failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the [18 U.S.C.] § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence - including an explanation for any deviation from the Guidelines range.

*Gall v. United States*, 128 S. Ct. 586, 597 (2007).

Assuming that the district court's sentencing decision is procedurally sound, this Court should then consider the substantive reasonableness of the sentence. *Id.* Substantive reasonableness turns on whether the length of the sentence is unreasonable because the sentencing court "select[ed] the sentence arbitrarily, bas[ed] the sentence on impermissible factors, . . . or [gave] an unreasonable amount of weight to any pertinent factor." *United States v. Webb*, 403 F.3d 373, 385 (6th Cir. 2005). This Court grants a presumption of substantive reasonableness to sentences within the advisory Guidelines range. *United States v. Williams*, 436 F.3d 706, 708 (6th Cir. 2006); *see also Rita v. United States*, 127 S. Ct. 2456, 2467 (2007) (approving of presumption).

## I.

On appeal, Quijada first argues that the sentence imposed by the district court is procedurally unreasonable due to the erroneous denial of a mitigating role adjustment to Quijada's Guidelines offense level.

A district court's factual findings regarding a denial of mitigating role adjustment are reviewed for clear error while its legal conclusions are reviewed *de novo*. *United States v.*

*Roberts*, 223 F.3d 377, 379-80 (6th Cir. 2000). To qualify for a mitigating role reduction, a defendant must be less culpable than most other participants and "substantially less culpable than the average participant." *United States v. Owusu*, 199 F.3d 329, 337 (6th Cir. 2000) (quoting U.S.S.G. § 3B1.2 cmt.n.3). This determination is "heavily dependent upon the facts," and the defendant must prove a mitigating role by a preponderance of the evidence. *Id.*

In his sentencing memorandum, Quijada argued that he was a minor player in the charged conspiracy. He submitted that he was urged by Contreras, his wife's cousin, to drive him to Columbus, that he received no financial compensation other than money for gas and lodging, and that he was not originally aware of the purpose of the trip. He admitted that he later learned that the trip was for the purpose of delivering cocaine and that his truck carried the switch that operated the hydraulic lift. But he argued that he was nonetheless a minor participant, because the offense would have taken place even if Quijada had refused to bring Contreras to Columbus. Quijada further argued that other participants organized, purchased, and distributed the cocaine and were heavily involved in the organization, and that he was "substantially less culpable" than the average participant.

At sentencing, the government argued that, in effect, Quijada had already received a two-level reduction because there was evidence that, on three occasions, Quijada was the driver in transactions involving similar quantities of cocaine, but that the government had limited Quijada's relevant conduct to the cocaine which was found on the third trip. The government also asserted that, per the indictment, Quijada was one of the few people who participated in all three trips, so he was not substantially less culpable than the other participants. Quijada

disagreed with this characterization of his activities, arguing that although he drove Contreras to Ohio three times, he had never transported cocaine, and that it was Contreras and not Quijada who had possession of the hydraulic switch.

The court determined that Quijada was not entitled to a mitigating role reduction, explaining,

> This is governed by sentencing guideline 3B1.2. And counsel, you may remember there was a change in the commentary. At one time, particularly in a drug conspiracy case, if the defendant was only held accountable for the amount he or she personally stored or transported, then the application of this guideline in the defendant's favor was prohibited, or discouraged at least.
>
> The guidelines now say that this doesn't necessarily prohibit [a reduction], but it certainly doesn't require it. So we are back to just evaluating what kind of role this defendant played . . . . [H]e did drive a truck that was an integral part of this drug transaction. And on that basis I find that attributing to him the amount that was in the other vehicle is appropriate, first of all, and is also consistent with his role.

(Joint Appendix ("J.A.") 117-118.)

Quijada argues that the district court failed to properly weigh his relative culpability against that of the other participants and that the court ruled entirely on its finding that Quijada's duties as a driver were integral to the success of Contreras' transport of cocaine. Quijada reasons that under the court's stated logic, it would improperly conclude that any driver or drug courier should be denied a mitigating role because there is a causal link in the chain of events that resulted in the crime, regardless of the level of culpability in relation to other participants.

To support this proposition, Quijada cites *United States v. Isaza-Zapata*, a Third Circuit case where a district court denied a mitigating role reduction because it determined that a courier's role was "essential for the commission of the crime," without providing other reasons for its ruling. 148 F.3d 236, 237 (3d Cir. 1998). The Third Circuit vacated the defendant's sentence and remanded for further proceedings, stating that "because the determination of whether a defendant is entitled to a minor role adjustment is highly dependent on the facts of particular cases, . . . a mechanical application of the guidelines by which a court always denies minor role adjustments to couriers because they are 'essential' . . . would be inconsistent with this guidance." *Id.* at 237-38; *see also United States v. Rodriguez*, 342 F.3d 296, 300 (3d Cir. 2003) (reversing and remanding when a district court denied a mitigating role reduction to a drug courier under similar circumstances).

While this Court agrees that the minor-role adjustment inquiry is highly fact sensitive, we have held that a defendant similarly situated to Quijada is not entitled to the reduction. In *United States v. Salas*, the defendant argued that the district court erred when it failed to grant a two-level downward adjustment because his role in the offense was limited to the act of carrying a container from one location to another and he had no foreknowledge of the amount or the extent of the illegal conduct. 455 F.3d 637, 644 (6th Cir. 2006). A panel of this Court rejected the defendant's argument, reasoning that although Salas was convicted based on a single incident of transporting cocaine, he was not held accountable for other conduct and he did not establish that he played a relatively minor role with regard to this shipment. The Court stated that "[s]imply because the court could have applied a minor role adjustment under the facts of this case . . .

does not mean that the district court was required to apply the adjustment." *Id.* (quotations and citations omitted).

Here, as in *Salas*, the court could have applied a minor role adjustment but was not required to do so. Quijada agreed that the relevant conduct in the case involved large quantities of cocaine, and admitted that prior to his arrest, he had learned that the trip was for the purpose of delivering cocaine and that his truck carried the hydraulic switch. Furthermore, although Quijada denied that he had ever transported cocaine, he admitted that he had driven Contreras to Ohio three times.

There was evidence that other participants played roles that were similar to or less than Quijada's role. For example, in the sentencing hearing for Quijada and Villavisencio, the government stated that it had no information that co-defendant Villavisencio was involved as an owner, manager or distributor of any of the cocaine. In addition, the government indicated that co-defendant Evans' role was that of a driver for Brown and Flores. Although these defendants received lower sentences than Quijada, they still support a finding that Quijada was not "substantially less culpable than the average participant" as required by U.S.S.G. § 3B1.2. Considering these circumstances, the trial court did not err by concluding that Quijada had not met his burden of establishing that he was a minor participant.

## II.

Quijada also argues that his 156-month sentence is substantively unreasonable because it is longer than necessary to satisfy the purposes of federal sentencing and is disproportionate to the sentences of co-defendants who engaged in similar conduct.

Quijada's arguments focus on the "parsimony" requirement of § 3553(a)(2) which directs a sentencing court to "impose a sentence sufficient, but not greater than necessary . . . to reflect the seriousness of the offense." 18 U.S.C. § 3553(a)(2). He also cites the need to avoid unwarranted sentence disparities among co-defendants. *See* 18 U.S.C. § 3553(a)(6). More specifically, he argues that his 156-month sentence is not parsimonious because, aside from Brown, a leader in the conspiracy who was sentenced to 200 months in prison, the remaining co-defendants received prison terms within the range of 41 to 90 months.

A review of the record supports the district court's decision. At sentencing, the district court articulated reasons that it believed justified the sentence and that supported its conclusion that any variances between Quijada's sentence and those of his co-defendants were warranted. First, the district court explicitly agreed with the government's statement that Quijada's criminal history was persistent and continuous. After noting that Quijada's history included one felony and thirteen misdemeanors, most of which were alcohol-related offenses, the court stated "this is one where I have some discretion, and it's a difficult issue because I don't treat driving under the influence as a minor matter, but I don't look at this defendant as a hardened criminal either," prior to the instant offense. (J.A. 118-20.) He noted that "typically when you get to a category IV, you are looking at least several serious offenses in the form of felonies or crimes of violence . . . and I am going to . . . move him to a category III." (J.A. 120-21.) These statements indicate that the district court recognized its discretion and established the criminal history level that it thought was appropriate under the circumstances.

The court also paid due attention to disparities between the sentences of Quijada and his co-defendants. The court inquired about the circumstances surrounding each co-defendant's crime, and inquired about each defendant's criminal history and level of cooperation with the government. The court then stated that "essentially the other six co-defendants all cooperated. At least three hit the safety-valve benefit, which causes a sharp reduction in the sentence, but also means they had no significant criminal history. So it seems to me there are differences [between Quijada] and all these defendants." (J.A. 124-25.) The court then concluded, given the differences between Quijada and his co-defendants and the large amount of drugs and money involved in the crime, that it would not be in the interests of justice to grant Quijada a variance. The court proceeded to discuss each of the 18 U.S.C. § 3553(a) factors, concluding that a sentence of 156 months was justified.

Ultimately, the district court's decision to grant or deny a variance is discretionary. *See United States v. Simmons*, 501 F.3d 620, 624 (6th Cir. 2007). This Court has held that differences in the criminal histories and in the level of cooperation between co-defendants justify a sentencing disparity between co-defendants. *See United States v. Phinazee*, 515 F.3d 511, 520 (6th Cir. 2008) (sentencing disparity justified by differences in criminal histories and departures for substantial assistance); *United States v. Conatser*, 514 F.3d 508, 522 (6th Cir. 2008) ("Disparities between the sentences of coconspirators can exist for valid reasons, such as differences in criminal histories, the offenses of conviction, or one coconspirator's decision to plead guilty and cooperate with the government.").

Here, unlike his coconspirators who received lesser sentences, Quijada failed to give the government substantial assistance and had an extensive criminal history. Under these circumstances, the court could properly conclude that the sentence was "sufficient, but not greater than necessary . . . to reflect the seriousness of the offense" under 18 U.S.C. § 3553(a)(2) and that it did not create an unwarranted sentencing disparity under § 3553(a)(6). Accordingly, we find that the sentence imposed by the district court was not unreasonable.

**CONCLUSION**

For the reasons stated above, we **AFFIRM** the judgment of the district court.