NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-2392
_____

UNITED STATES OF AMERICA

v.

MICHAEL WESLEY WHITMER, II,
a/k/a MARK PRIL,
a/k/a MARK BALL,
a/k/a SEBASTIAN RUETZEL,
a/k/a JOHN VESTAL,
a/k/a JAMES MEADS

Michael Wesley Whitmer, II,

Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-07-cr-00464-001)
District Judge:  Honorable Anita B. Brody
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
October 2, 2012

Before:  FUENTES, FISHER and GREENBERG, *Circuit Judges*.

(Filed: November 27, 2012)
_____

OPINION OF THE COURT
_____

FISHER, *Circuit Judge*.

Michael Wesley Whitmer II appeals from a judgment of conviction and sentence for possession of a counterfeit security, forging a passport, identity fraud, aggravated identity theft, and destruction of physical evidence. He alleges that his guilty plea was invalid, the government breached its plea agreement, his counsel provided ineffective assistance, and his grand jury considered false information. Whitmer further contends that the District Court failed to adequately address his request to proceed pro se, used an incorrect calculation of the sentencing guidelines, impaired his right of allocution, and added an impermissible special condition of supervised release relating to mental health treatment. For the reasons stated below, we will affirm in part and remove the mental health condition.

I.

We write principally for the parties, who are familiar with the factual context and legal history of this case. Therefore, we will set forth only those facts necessary to our analysis.

On January 22, 2007, Whitmer presented a counterfeit American Express traveler's cheque in order to purchase a $100 ticket at the Kimmel Center in Philadelphia. Whitmer then attempted to have the ticket refunded for cash. At the time of the purchase, Whitmer presented an altered British passport (which had been validly issued to another person) under the name "Mark Prim." Whitmer was arrested the next day in a hotel

2

room, where police found a laptop, printer, and other materials used to reproduce the same traveler's cheque. After he was arrested, Whitmer was observed trying to alter his fingerprints.

Further investigation revealed that Whitmer had used the same traveler's cheque 58 times before his arrest, using a number of different identities and names. He had also stolen a number of credit cards.

Whitmer was charged with possessing a counterfeit security in violation of 18 U.S.C. § 513 (count one), forgery of a passport in violation of 18 U.S.C. § 1543 (count two), identity fraud in violation of 18 U.S.C. § 1028(a)(2) (count three), aggravated identity theft in violation of 18 U.S.C. § 1028A (count four), and destruction of physical evidence in violation of 18 U.S.C. § 1519 (count five). Although Whitmer was represented by counsel at the beginning of the prosecution, he filed a number of pro se pleadings, and his first assigned counsel eventually withdrew and was replaced.

Whitmer entered a guilty plea to all charges on April 9, 2009, pursuant to a plea agreement. The agreement included a provision barring Whitmer from appealing or collaterally challenging his conviction or sentence under most circumstances. Whitmer was placed under pre-trial supervision and released to the Fresh Start Recovery House in Philadelphia. A few days before the sentencing hearing, Whitmer left the Recovery House without authorization, and the District Court issued a bench warrant for his arrest.

3

Police in Columbus, Ohio later arrested Whitmer and found stolen passports and other documents on his person.

Whitmer was returned to custody, and his counsel was allowed to withdraw. He represented himself at his May 6, 2010 sentencing hearing. The parties agreed to recommend a sentence at the low end of a stipulated guideline range of 28 to 34 months. The Probation Office later determined that this stipulated range was incorrect, and calculated a new range of 70 to 81 months. The District Court adopted the guideline recommendations contained in the presentence report and imposed a sentence of 81 months of imprisonment: 57 months each for counts one, two, three and five, running concurrently, and 24 months for count four, to be served consecutively. Whitmer appeals from that decision.

## II.

The District Court had subject matter jurisdiction under 18 U.S.C. § 3231. We have appellate jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

## III.

Whitmer alleges numerous errors on appeal which, he submits, compel us to reverse the conviction, remand for an evidentiary hearing, and allow for the withdrawal of his previous guilty plea. We conclude, based on the analysis below, that the only relief to which Whitmer is entitled is the removal of the mental health related special condition of release.

4

A.

Whitmer contends that his previous guilty plea is invalid because the government did not state a sufficient factual basis to support his guilty plea on counts three, four, and five. Ordinarily, we review the District Court's finding of a factual basis for a plea for abuse of discretion. *United States v. Cefaratti*, 221 F.3d 502, 509 (3d Cir. 2000). Because Whitmer raises this objection for the first time on appeal,[1] we review for plain error. *Puckett v. United States*, 556 U.S. 129, 134-35 (2009). Under this standard, we have the discretion to provide a remedy only when the error: "(1) constitutes a [d]eviation from a legal rule; (2) is clear or obvious, rather than subject to reasonable dispute; (3) affect[s] the appellant's substantial rights; and (4) seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *United States v. Dahmen*, 675 F.3d 244, 247-48 (3d Cir. 2012) (internal quotation marks and citations omitted).

"Before entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea." Fed. R. Crim. P. 11(b)(3). The court may make this determination based on "whatever means is appropriate in a specific case," including the

---

[1] Whitmer maintains that he preserved these issues before the District Court in his May 5, 2010 motion. That document states that parts of the presentence report are "false, misleading, or unduly prejudicial." To the extent the paragraphs Whitmer lists reference the facts underlying counts three, four, and five, the motion remains insufficient to preserve the issue for appeal. *See United States v. Dupree*, 617 F.3d 724, 728 (3d Cir. 2010) ("A fleeting reference or vague allusion to an issue will not suffice to preserve it for appeal[.]").

defendant's admissions, the presentence report, and the government's proffer of evidence. *Cefaratti*, 221 F.3d at 509.

With regard to count three (identity fraud), Whitmer contends that the government did not provide evidence to establish a "transfer" in violation of 18 U.S.C. § 1028(a)(2), which criminalizes knowingly transferring a false identification document. Because the prosecutor told the District Court that Whitmer had given the passport to a Kimmel Center employee as part of a ticket purchase, the Rule 11(b)(3) standard is satisfied as to this count.

Whitmer also contends that there was there was no factual basis for his plea of guilty to count four (aggravated identity theft), which requires that the defendant knowingly used identification that actually belonged to another real person. Because the prosecutor told the District Court the passport Whitmer had altered to include his picture and alias actually belonged to a British citizen, this argument has no merit. The alteration to include Whitmer's photo, along with the other real, fraudulently obtained identifying documents found on his person when he was apprehended in Columbus, provide sufficient facts on which the District Court could rely.

Finally, Whitmer argues that the District Court lacked a sufficient factual basis regarding count five (destruction of physical evidence) because no facts were presented to support a nexus between Whitmer's attempt to destroy his own fingerprints and a

federal matter.  This argument fails because there is no "federal nexus requirement."  *See*

*United States v. Moyer*, 674 F.3d 192, 209 (3d Cir. 2012).

Whitmer correctly points out a discrepancy between the plea agreement and the superseding indictment and presentencing report.  The plea agreement (as well as the government's references to that agreement at hearings throughout the case) refers to count five as destruction of physical evidence in a federal investigation.  Supp. App. at 114.  The presentence report, Supp. App. at 14 (adopted by the District Court without change), adds the language "and aiding and abetting," which was included in the superseding indictment, Supp. App. at 39.  This error, and the resulting lack of factual support at sentencing for the aiding and abetting averment, did not ultimately impact Whitmer's substantial rights.  In the presentence report, the Probation Office notes that count five was calculated as a +2 level adjustment for obstruction of justice pursuant to U.S.S.G. § 3C1.1.  This is the same adjustment Whitmer would have received had the aiding and abetting language not been included in the report's initial description of count five.  No other reference to aiding and abetting was made throughout the sentencing proceeding.

For these reasons, we conclude that the District Court did not commit plain error when it found that Whitmer had entered a valid guilty plea supported by sufficient facts.

B.

In his second claim, Whitmer argues for the first time on appeal[2] that the government breached the plea agreement, and as such he should be able to withdraw the agreement. We disagree.

"[W]hen a defendant waits until his appeal to allege a violation of his plea agreement, our authority to remedy the alleged error is strictly circumscribed." *Dahmen*, 675 F.3d at 247-48 (internal quotation marks and citations omitted). We review such claims for plain error, and have the discretion to provide a remedy only when the error: "(1) constitutes a [d]eviation from a legal rule; (2) is clear or obvious, rather than subject to reasonable dispute; (3) affect[s] the appellant's substantial rights; and (4) seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Id.* (internal quotation marks and citations omitted). "The defendant whose plea agreement has been broken by the Government will not always be able to show prejudice, either because he obtained the benefits contemplated by the deal anyway . . . or because he likely would not have obtained those benefits in any event." *Puckett*, 556 U.S. at 141-42.

Here, Whitmer alleges that the government violated its agreement in four ways: impermissibly suggesting in its sentencing memorandum that the guideline range

---

[2] Whitmer maintains that he preserved these issues for appeal by telling the District Court that he did not get "the benefit of the bargain," that he "would be appealing this case," and that he planned to file "a rule 35 motion." These statements are insufficient because none of these statements "unequivocally put [Whitmer's] position before the trial court at a point and in a manner that permits the court to consider its merits." *Shell Petroleum, Inc. v. United States*, 182 F.3d 212, 218 (3d Cir. 1999).

suggested by the Probation Office (which was higher than the stipulated range in the agreement) would be appropriate, opposing credit for acceptance of responsibility, failing to correct factual inaccuracies in the presentence report, and moving to enforce the appellate waiver. While the government concedes the sentencing memorandum made statements inconsistent with the plea agreement, we are persuaded that the memorandum did not prejudice Whitmer. The District Court made clear at the sentencing hearing that it understood that the parties had agreed to a lower stipulation, that the government could not argue in favor of another range at the hearing, and that the sentencing court was not bound by those stipulations. Furthermore, Whitmer concedes that the District Court based its decision on the revised guideline calculation from the Probation Office, which accounted for Whitmer's misconduct since the time of the original report – a change that underscores the fact that the government's memorandum was not likely the reason he did not receive the sentence outlined in the plea agreement. *See* Appellant Rep. Br. at 24.

As for the other breaches Whitmer alleges, the record of the sentencing hearing makes clear that the District Court heard and, where appropriate, made the factual changes Whitmer requested. The government's decision to invoke the appellate waiver here does not violate the plea agreement. Because the plea agreement specifically limited the parties' stipulation that Whitmer qualified for the downward adjustment for acceptance of responsibility with the language "as of the date of the agreement," the government was free to argue that Whitmer's later actions were inconsistent with such an

9

adjustment. *See* Supp. App. at 116. For these reasons, we conclude that Whitmer has not established a breach of the plea bargain meriting relief.

C.

In his third claim, Whitmer argues that his counsel was ineffective. We conclude that this claim is not properly considered as part of this direct appeal.

Claims of ineffective assistance of counsel are generally reserved for collateral proceedings, which are better equipped to develop the record needed to evaluate these claims. *United States v. Thornton*, 327 F.3d 268, 271-72 (3d Cir. 2003). Without this record, "[t]he appellate court may have no way of knowing whether a seemingly unusual or misguided action by counsel had a sound strategic motive or was taken because the counsel's alternatives were even worse." *Id.* at 272 (citing *Massaro v. United States*, 538 U.S. 500, 504-05 (2003)). The exception established by *United States v. Headley*, 923 F.2d 1079 (3d Cir. 1991), which allows consideration of ineffective assistance claims on direct appeal, requires that the record be fully developed.

The *Headley* exception does not apply here. While Whitmer points to numerous ways in which he believes his appointed counsel was deficient, and identifies where in the record he believes those deficiencies occurred, App. Rep. Br. at 29-30, nothing in the record provides the factual basis needed for the court to decide whether counsel employed a reasonable strategy. We therefore deny Whitmer's claim without prejudice to its reassertion under 28 U.S.C. § 2255.

10

D.

Next, Whitmer claims that false information was presented to the grand jury, depriving the District Court of jurisdiction to hear this case. We do not agree, because any objection to an infirmity in the grand jury proceedings was waived. Appeals regarding the pre-plea proceedings – including constitutional issues – are waived when a party enters into a counseled, intelligent, and voluntary plea agreement. *E.g.*, *Tollett v. Henderson*, 411 U.S. 258, 267 (1973) ("When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."). For this reason, we need not evaluate the merits of Whitmer's claim regarding false information presented to the grand jury. By entering into a guilty plea, Whitmer waived his right to raise objections to pretrial proceedings. This issue was therefore waived.

E.

Whitmer alleges additional errors around his requests to proceed pro se, the calculation of the sentencing guidelines, and his right of allocution. Because we find that a valid appellate waiver precludes these appeals, we do not reach the merits of these arguments.

An appellate wavier will not be enforced where the government has breached the plea agreement. *United States v. Wilson*, 429 F.3d 455, 458 (3d Cir. 2005). Because we

11

conclude that the government has not breached its agreement, we begin by considering de novo the enforceability of the waiver, including "(1) whether the waiver of the right to appeal [Whitmer's] sentence was knowing and voluntary; (2) whether one of the specific exceptions set forth in the agreement prevents the enforcement of the waiver; i.e., what is the scope of the waiver and does it bar appellate review of the issue pressed by the defendant; and (3) whether enforcing the waiver would work a miscarriage of justice." *United States v. Goodson*, 544 F.3d 529, 536 (3d Cir. 2008) (citing *United States v. Jackson*, 523 F.3d 234, 243-44 (3d Cir. 2008) (quotation marks omitted)).

Here, the District Court properly assured through its questioning that Whitmer's acceptance of the plea agreement was knowing and voluntary. Whitmer's counsel at the time of the plea further underscored this conclusion by stating "[Whitmer] understands the waiver of rights, and he's agreed to waive his rights, and that's why he had in fact executed the waiver of rights." Supp. App. at 126. At the District Court's request, Whitmer verbally affirmed his counsel's statement. Furthermore, none of the exceptions detailed in the agreement (i.e., claims on appeal that the sentence exceeds the statutory maximum, represents an upward departure from the guidelines, or imposes an unreasonable sentence above the guideline range as determined by the sentencing court) cover the errors Whitmer alleges. Finally, we find nothing in the record suggesting that enforcing the waiver would work a miscarriage of justice – a standard that requires more than mere meritorious claims. For these reasons, we conclude that Whitmer has waived

12

his right to appeal alleged errors related to his requests to proceed pro se, the calculation of the sentencing guidelines, and his allocution.

H.

Finally, Whitmer claims that the District Court erred in adding a special provision to the terms of his release that gave the Probation Office discretion to require him to participate in a mental health program. The government has elected not to assert the appellate waiver as to this issue, and we conclude the condition will be removed.

"[W]hile probation officers may have discretion to decide the details of a defendant's mental health treatment, they may not be given the authority to decide whether or not such treatment will be required." *United States v. Pruden*, 398 F.3d 241, 243 (3d Cir. 2005). Here, although evidence from Whitmer's psychological evaluation might have supported an order of mental health treatment, the District Court instead stated "if the Probation Department finds its appropriate – then I will allow it. . . . The Probation Department will have to decide that." This statement, coupled with the fact that the District Court did not refer to or rely on the psychologist's report, leads us to conclude that this special condition of supervised release constituted an impermissible delegation of judicial authority to the Probation Department. We will therefore order this condition removed.

13

IV.

For the foregoing reasons, we will affirm the judgment of the District Court in part and will order the special condition of supervised release relating to mental health treatment removed.